## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MASON WHITE HYDE-EL, )
)
Petitioner, )
)
v. )  1:16CV1376
)
KATIE POOLE, )
)
Respondent. )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an Answer (Docket Entry 4), a Motion for Summary Judgment (Docket Entry 5), and a Brief in Support of the Motion for Summary Judgment (Docket Entry 6). Petitioner then filed a "Reply to Respondent's Answer" (Docket Entry 8), a "Reply to Respondent's Brief" (Docket Entry 9), and an "Omnibus Motion" (Docket Entry 10). Respondent next filed a Response to Petitioner's "Omnibus Motion." (Docket Entry 11.) Petitioner, in turn, filed a "Supporting Brief Opposing Respondent's Supporting Brief Opposing Petitioner's Omnibus Motion" (Docket Entry 12), a "Quo Warranto; Motion to Dismiss – Set aside, Amend Relief Sought" (Docket Entry 13), and a Notice (Docket Entry 14). This matter is now prepared for a ruling.

### Background

On May 11, 2015, in Superior Court, Davie County, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), Petitioner pled guilty to (1) aiding and abetting assault with a deadly

weapon inflicting serious injury and (2) larceny from the person.[1] (Docket Entry 6, Ex. 1, Part 2 at PDF pages 25-28.) He was sentenced to consecutive terms of 44-65 months and 15-27 months of imprisonment. (*Id.* at 33-36.)

Petitioner then filed a notice of appeal and a certiorari petition with the North Carolina Court of Appeals. *State v. Hyde*, 789 S.E.2d 568 (N.C. Ct. App. 2016). On June 21, 2016, that court granted certiorari, affirmed the convictions, but remanded to correct a clerical error. *Id.* On September 22, 2016, the North Carolina Supreme Court denied further review. *State v. Hyde*, 793 S.E.2d 241 (N.C. 2016).

In pertinent part, on September 7, 2016, Petitioner also filed a motion for appropriate relief ("MAR") in Superior Court, Davie County. (Docket Entry 1 at 14.) It too was denied on September 22, 2016. (*Id.* at 32.) On October 13, 2016, Petitioner filed a certiorari petition in the North Carolina Court of Appeals, which was denied on November 3, 2016. (*Id.* at 33.) Petitioner filed this federal habeas petition on November 30, 2016. (Docket Entry 1.) This matter is now prepared for a ruling.

### Petitioner's Claims

Petitioner alleges due process violations due to: (1) an unlawful search without probable cause, an invalid warrant for arrest, an abuse of discretion, a common law challenge to legality of arrest/seizure; (2) the denial of right to counsel, an invalid waiver of counsel; (3) ineffective assistance of counsel; (4) an invalid indictment, an error in pleading, want of probable cause, and want of oath or affidavit or affirmation; (5) the lack of confrontation and cross-

---

[1] Partway through Petitioner's first change of plea hearing, he decided that he was unwilling to plead guilty. (Docket Entry 6, Ex. 8 at PDF page 41.) He ultimately changed his mind, however, and entered into the guilty plea discussed herein at a second change of plea hearing.

examination of witnesses and evidence; (6) the lack of compulsory process for securing the attendance of witnesses for defense; (7) cruel and unusual punishment, commitment, want of jurisdiction, abuse of discretion; and (8) the exclusionary rule, involuntary servitude, undue conviction, commitment. (Docket Entry 1, § 12, Grounds 1-8.)

## Standard of Review

Where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts.

A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness from an objective standpoint. *Id.* at 409-11. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This standard applies to Petitioner's grounds for relief, which are discussed below.

3

## Discussion

### Ground One

First, Petitioner alleges a due process violation due to an unlawful search without probable cause, an invalid arrest warrant, an abuse of discretion, and the illegality of arrest/seizure. (Docket Entry 1, § 12, Ground 1.) Petitioner states further, "Petitioner herein has not received, nor been shown, served, with an affidavit/affirmation from the Complainant, Jerry Hartman RE: The Warrant for arrest(s); Petitioner herein has NOT been shown by any judicial official of how probable cause was found to authorize his arrest order." (*Id.*) For the following reasons, Petitioner's first ground warrants no relief and should be denied.[2]

"[R]epresentations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Absent "clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." *Little v. Allsbrook*, 731 F.2d 238, 239 n.2 (4th Cir. 1984). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing

---

[2] Petitioner's contentions often overlap. The Court has endeavored to address them in the most expeditious and logical manner. To the extent one of Petitioner's many claims or sub-claims has not been specifically discussed in greater detail, it should still be denied for essentially the reasons set out herein.

4

that the advice he received from counsel" was incompetent.[3] *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also McMann v. Richardson*, 397 U.S. 759, 766 (1970) ("the plea is also a waiver of trial-and unless the applicable law otherwise provides, a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant . . . .").

In this case, while representing himself pro se with the aid of standby counsel, Petitioner entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).[4] "An *Alford* plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest." *United States v. King*, 673 F.3d 274, 281 (4th Cir. 2012) (citations and internal quotation marks omitted). A trial court may accept an *Alford* plea when: "(1) the defendant 'intelligently concludes that his interests require entry of a guilty plea;' and (2) 'the record before the judge contains strong evidence of actual guilt.'" *Id.* (quoting *United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir. 2007)). In contrast to a guilty plea, a defendant entering an *Alford* plea, "does not confirm the factual basis underlying his plea." *King*, 673 F.3d at 281 (citing *United States v. Alston*, 611 F.3d 219, 227 (4th Cir. 2010)). "The trial court's evaluation and ultimate acceptance of an *Alford* plea ensures 'that a defendant's protestations of innocence do not undermine confidence that the constitutional requirement that a plea of guilty be voluntary and intelligent has been satisfied.'" *King*, 673 F.3d at 281 (quoting *United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011)).

---

[3] The Court will discuss Petitioner's ineffective assistance of counsel claims below in addressing Petitioner's third ground for relief.

[4] The Supreme Court's ruling in *Tollett* applies to actions in which a defendant has entered a plea of no contest pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 (1970). *See, e.g.*, *Thomas v. Outlaw*, No. 5:10-HC-2258-FL, 2012 WL 255336, at *2 (E.D.N.C. Jan. 27, 2012) (unpublished).

5

Here, Petitioner's guilty plea is a formidable barrier to his claims. In this case, Petitioner executed a transcript at his change of plea.[5] (Docket Entry 6, Ex. 1, Part 2 at PDF pages 25-28.) In it, Petitioner swore under oath in open court that he was 31 years-old, that he had attained a GED, could hear and understand the court, and was not under the influence of any substances. (*Id.* at 25.) He swore he discussed his charges with his attorney (standby counsel), who explained them to him, and swore further that he understood the nature of the charges, every element of each charge, and that he had discussed possible defenses with standby counsel. (*Id.*) Petitioner swore that he was satisfied with standby counsel's services. (*Id.*)

Petitioner swore further that he pled guilty to the charges in question pursuant to an *Alford* guilty plea, that he considered it in his best interest to plead guilty, and that he understood that under his *Alford* guilty plea, he would be treated as being guilty regardless of whether he admitted that he was in fact guilty. (*Id.* at 26.) Petitioner also swore that the only term or condition of his plea bargain was that "Sentencing shall be in the sole discretion of the Court." (*Id.* at 27-28.) Petitioner swore that he personally accepted this arrangement of his own free will and swore further that no one made any other promises or threatened him to cause him to enter this plea against his wishes. (*Id.* at 27.) Petitioner also agreed that there was a factual basis to support his plea. (*Id.*) Petitioner swore he had no questions. (*Id.*)

Also, stand-by defense counsel certified that he explained to Petitioner the nature and elements of the charges to which Petitioner pled guilty along with the aggravating and mitigating factors and prior record points for sentencing, to the extent there were any such

---

[5] The record contains a transcript of Petitioner's change of plea, which also reflects the representations indicated on his change of plea form. (Docket Entry 8 at PDF pages 153-189.)

factors or points. (*Id.*) The prosecutor also certified that the terms and conditions of the plea were correct. (*Id.*) The Superior Court found that there was a factual basis for the entry of the plea, that Petitioner was satisfied with his lawyer's services, that he was competent to stand trial, and that the plea was an informed choice made freely, voluntarily, and understandingly. (*Id.* at 28.) The state court then sentenced Petitioner to consecutive terms of 44-65 and 15-27 months of imprisonment. (*Id.* at 33, 35.)

In light of this, Petitioner may not raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett*, 411 U.S. at 267; *McMann*, 397 U.S. at 766. Petitioner's knowing, voluntary guilty plea, is itself constitutionally sufficient to prove every essential element of each charge, and leaves nothing remaining but sentencing. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (requirements for valid guilty plea). Also, as noted, the trial court specifically found as a fact that there was a factual basis for the entry of the plea, Petitioner was satisfied with stand-by counsel's legal services, he was competent to stand trial, and the plea was an informed choice made freely, voluntarily, and understandingly. The trial court's findings in accepting the plea are supported by Petitioner's responses during the plea colloquy and are presumed correct. *See* 28 U.S.C. § 2254(e)(1).[6] Finally, the state court's rejection of this argument is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as set out by the United States Supreme Court. For all these reasons, Petitioner's first ground for relief lacks merit.

---

[6] Petitioner's argument that his plea was not made knowingly, voluntarily, and intelligently is insufficient to warrant any form of relief. (Docket Entry 9 at 9-11.) These arguments fail, if for no other reason than they are vague, conclusory, unsupported, and/or at odds with sworn statements Petitioner made at his change of plea hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).

## Ground Two

Petitioner next asserts a due process violation due to his denial of a right to counsel and because of an invalid waiver of counsel on a silent record. (Docket Entry 1, ¶ 12, Ground Two.) In support, Petitioner asserts, "Petitioner herein has not waived his right to have counsel at the initial appearance with Magistrate, Derick Miller II. Petitioner has not signed any waiver regarding this proceeding, hearing, trial appearance. The condition of release order states that Petitioner was advised of my right to communicate with counsel and friends. Petitioner herein has not had an opportunity to invoke, exercise any rights afforded to him at the initial appearance." (*Id.*) For the following reasons, this ground lacks merit.

First, insofar as Petitioner is referencing state statutes, such as N.C.G.S. § 15A-511(b), relating to procedures for initial appearances in state court, he fails to show he is entitled to relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Second, insofar as Petitioner asserts a due process violation related to his initial appearance and his right to counsel, that argument also fails. While Petitioner's right to counsel attached at his initial appearance, *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 199 (2008), that does not necessarily mean that he has the right to counsel at that appearance. Indeed, the initial appearance is typically precisely where a defendant invokes their right to counsel. There has to be some first event where a defendant can request counsel; often necessarily, they will

8

not yet have representation at that proceeding. *See Walker v. United States*, No. 4:95CR373, 2014 WL 4388253, at *3 (E.D. Va. Sept. 4, 2014) (unpublished).

Nothing on the record here suggests that Petitioner went unrepresented, either by counsel or, as explained in greater detail below, with the aid of standby counsel, at a critical stage of the proceedings. Petitioner also fails to meaningfully allege that he suffered any actual prejudice or that, had an attorney been appointed at an earlier time, a meritorious defense might have been asserted resulting in his release or in the dismissal of the charges levied against him. *See, e.g, Wingo v. Kaufman Cty.*, No. 3:09-CV-2457-P, 2010 WL 2307184, at *1 (N.D. Tex. June 4, 2010) (unpublished) ("Plaintiff's conclusory assertion that if counsel had been appointed at his initial appearance it would have been discovered sooner that he had not committed any crime is insufficient . . . .").

Additionally, as alluded to in the prior paragraph, Petitioner proceeded pro se with the aid of standby counsel during the course of this criminal proceeding. To understand why this was constitutionally permissible, additional explanation is in order.

In the context of reviewing the disposition of a state habeas petition, the Fourth Circuit Court of Appeals has discussed waiver of counsel as follows:

> The Sixth Amendment guarantees criminal defendants the assistance of counsel during all critical stages of the criminal justice process, as well as the implied inverse right "to proceed *without* counsel when [the defendant] voluntarily and intelligently elects to do so." *Faretta [v. California]*, 422 U.S. [806,] 807, 95 S.Ct. 2525 [(1975)]. The "defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Id.* at 835, 95 S.Ct. 2525. Nonetheless, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made

9

with eyes open." *Id.* at 835, 95 S.Ct. 2525 (internal quotation marks omitted).

The Supreme Court, however, has never "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). Rather, "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.*; *see also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) . . . .; *United States v. Gallop*, 838 F.2d 105, 109 (4th Cir.1988) . . . . In the context of a guilty plea, for example, the Court has held that "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Tovar*, 541 U.S. at 81, 124 S.Ct. 1379. "As to waiver of trial counsel," the defendant "must be warned specifically of the hazard ahead." *Id.* at 88–89, 124 S.Ct. 1379; *see also Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) . . . .

Finally, because *Faretta* sets forth a general rule governing such waivers of counsel, we must remain particularly mindful of the leeway state courts have in applying the *Faretta* rule. " '[T]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway state courts have in reaching outcomes in case-by-case determinations.' " *Renico v. Lett*, 559 U.S. 766, 776, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (alteration omitted) (quoting *Yarborough*, 541 U.S. at 664, 124 S.Ct. 2140); *see also Harrington*, 131 S.Ct. at 786. For similar reasons, a federal habeas court's reliance upon circuit court precedent interpreting or expanding such a general Supreme Court rules is severely constrained. *See Marshall v. Rodgers*, ___ U.S. ___, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013).

> Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it

10

> may not canvass circuit decisions to determine
> whether a particular rule of law is so widely
> accepted among the Federal Circuits that it would,
> if presented to this Court, be accepted as correct.

> *Id.* at 1450–51 (citations omitted); *see also Parker v. Matthews*,
> ___U.S. ___, 132 S.Ct. 2148, 2155–56, 183 L.Ed.2d 32 (2012) . .
> . . We are not at liberty to upset a state court adjudication on a
> constitutional claim based upon requirements that we might
> recommend to or even impose upon our own district courts, so
> long as the state court's application of the general rule was a
> reasonable one in light of the controlling Supreme Court
> mandate.

*Spates v. Clarke*, 547 F. App'x 289, 293-94 (4th Cir. 2013).

The Fourth Circuit has also described waiver in a different context, that is, waiver by

conduct in a direct criminal appeal, as follows:

> We have said that the right to self-representation is
> inescapably in tension with the right to counsel. This is so
> because invocation of the former "poses a peculiar problem: it
> requires that the defendant waive his right to counsel." *Fields v.
> Murray*, 49 F.3d 1024, 1028 (4th Cir. 1995) (en banc); *see also United
> States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005) ("Th[e right to
> self-representation] . . . is mutually exclusive of the right to
> counsel guaranteed by the Sixth Amendment."); *United States v.
> Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997) (explaining that the
> two rights are "essentially inverse aspects of the Sixth
> Amendment and thus . . . assertion of one constitutes a de facto
> waiver of the other"). Recognizing this tension, we have clarified
> that because access to counsel "affects [a defendant's] ability to
> assert any other rights he may have," *Fields*, 49 F.3d at 1028
> (internal quotation mark omitted), "the right to counsel is
> preeminent and hence, the default position," *Singleton*, 107 F.3d
> at 1096.

> Although other courts have held that the right to counsel
> may be relinquished either intentionally or unintentionally, *see
> United States v. Leggett*, 162 F.3d 237, 249–50 (3d Cir. 1998)
> (explaining that the right to counsel can be waived by a knowing
> and voluntary waiver or unintentionally forfeited as a result of
> "extremely serious misconduct"), we have never held that

11

counsel can be relinquished by means short of waiver. Consistent with our view that representation by counsel is the "default position," we have instead instructed lower courts to "indulge in every reasonable presumption" against the relinquishment of the right to counsel. *Fields*, 49 F.3d at 1029 (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)). Accordingly, an effective assertion of the right to self-representation (and thus a waiver of the right to counsel) requires that a defendant "knowingly and intelligently" forgo the benefits of counsel after being made aware of the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525.

The Supreme Court has not established precise guidelines for determining whether a waiver is knowing and intelligent.

*United States v. Ductan*, 800 F.3d 642, 649 (4th Cir. 2015).

From these two cases, the Court reaches a number of conclusions. As an initial matter, this Court may not overturn a state court adjudication on a constitutional claim in a habeas proceeding based upon rules imposed on a direct appeal in a federal criminal proceeding, as long as the state court's application of the general rule was reasonable in light of Supreme Court law. Moreover, although the Fourth Circuit has not recognized waiver of counsel by conduct in federal criminal trials, it recognizes that other circuits have done so, and that the Supreme Court has not ruled on this point.

Applying these principles to this case, the Court concludes that the state court denial of Petitioner's Sixth Amendment denial of counsel claim[7] was neither contrary to nor an unreasonable application of the controlling Supreme Court precedent. Petitioner was initially appointed counsel, Ms. Lori I. Hamilton-Dewitt. Petitioner wrote counsel a letter informing

---

[7] Petitioner raised the substance of this ground in his certiorari petition to the North Carolina Court of Appeals, where it was reviewed, but found to have no merit. (Docket Entry 6, Ex. 3 at 7-12.) *State v. Hyde*, 789 S.E.2d 568 (N.C. Ct. App. 2016).

her that she was fired. (Docket Entry 6, Ex. 1, Part 1 at PDF page 10.) Counsel then filed a motion to withdraw. (*Id.* at 9-11.) On September 9, 2013, Petitioner appeared in court for the first time with counsel. (*Id.*, Ex. 8, at PDF page 2.) Petitioner stated, "For the record let it be known that I do not recognize this courtroom. I do not recognize no agreements, contracts or arguments in the courtroom. I am hear on special appearance to challenge subject matter jurisdiction, to challenge subject matter jurisdiction." (*Id.* at 4.)

The trial court then attempted to address counsel's motion to withdraw. Petitioner unequivocally refused to answer any of the trial court's inquiries and repeatedly objected to the jurisdiction of the court on incoherent, unsupported legal theories. (*Id.* at 8-12.) In addition, Petitioner unequivocally waived his right to counsel by conduct, by insisting on representing himself, and by declaring himself competent to handle his own affairs.

> The Court: Mr. Hyde, how do you feel about Miss Hamilton's motion to withdraw as your attorney? Whether or not you accept the jurisdiction of the State of North Carolina concerning these criminal cases, I would advise you to think this thing out soberly and intelligently because of the fact whether you acknowledge or accept the jurisdiction of this Court, this Court could put you - what's the maximum he's charged with?
>
> [Prosecutor] Your Honor, he's charge with aiding and abetting assault with a deadly weapon with intent to kill inflicting serious injury. That is a Class C felony and I don't want to misstate the possible maximum to the Court, I don't have a chart in front of me -

. . . .

> The Court: Just on one of these charges alone, Mr. Hyde, you could receive up to 231 months in prison. That's a long time. And whether or not you like it, you are in custody and under the actual physical jurisdiction of this Court. So I would caution you not to fire your lawyer because whether you like it or not, I think you need legal advice to assist you to continue on the matter. So

13

here again, what do you want to do about your attorney, Miss Hamilton.

Defendant: For the record I sub juris (sic). I am impropria persona. Judge, if you are representing me, you, your agents, heirs and assigns are hereby fired without prejudice, without recourse, pursuant to the Uniform Commercial Code Article 1-308.

The Court: Yes, sir. But I just told you the Uniform Commercial Code is a civil statute, does not apply to the criminal statutes of the State of North Carolina. So, it doesn't apply. So I can't grant your motion under something that doesn't apply, is not within the province of this Court to even acknowledge that statute as applying to your cases. That's why I say you need a lawyer.

Defendant: For the record, you are practicing law behind the bench, you are representing me and you are fired.

The Court: I am not representing you. Miss Hamilton is representing you.

Defendant: I'm – for the record, I am in personam.

The Court: Do you know [what] you just said?

Defendant: I am here to challenge subject matter jurisdiction and personal jurisdiction.

The Court: I told you I acknowledge the fact that you don't feel you are subject to the jurisdiction of the State of North Carolina. However, the State of North Carolina disagrees. You have a lawyer and right now I am asking you about Miss Hamilton and you are reciting things in court that I don't think you know what you are saying. It is Latin and has nothing to do with the charges against you, sir. Here again, how do you feel about keeping Miss Hamilton as your lawyer?

Defendant: For the record, I'm sub juris (sic). I'm competent -

The Court: What does that mean?

Defendant: Competent to handle one's affairs.

14

(*Id.*)  The state trial court then appointed Ms. Hamilton-Dewitt as standby counsel, and strongly recommended that Petitioner use her services as counsel.  (Docket Entry 6, Ex. 8, at PDF page 11-13.)

On May 27, 2014, Petitioner filed a pro se motion to suppress.  (*Id.*, Ex. 1, Part 1, at PDF pages 22-26.)  On February 25, 2015, the state and Ms. Hamilton-Dewitt jointly moved for her to withdraw as standby counsel.  (*Id.*, Ex. 8, at PDF page 46.)  The trial court allowed this motion and appointed Mr. Chad Freeman as standby counsel.  (*Id.* at 48.)  During this February 25, 2015 hearing, the trial court engaged Petitioner in a colloquy warning him that it would probably not be in his best interest to represent himself, warning him he did not understand the rules of evidence and trial procedure.  Petitioner still insisted on waiving counsel, representing himself, and even wanted to waive standby counsel.  The trial court continued the matter without ruling on the motion to waive standby counsel.  (*Id.* 49-51.)

On April 20, 2015, the trial court conducted a hearing on Petitioner's pro se suppression motion, with standby counsel Mr. Freeman attending.  (*Id.*, Ex. 8 at PDF page 74.)  On May 7, 2015, the trial court entered detailed findings of fact and conclusions of law, and denied the motion to suppress.  (*Id.*, Ex. 1, Part. 2, PDF pages 11-14.)  On May 11, 2015, Petitioner entered an *Alford* plea pursuant to a plea bargain to aiding and abetting assault with a deadly weapon inflicting serious injury and larceny from the person, with sentencing left to the discretion of the court.  (*Id.*, Ex. 8 at PDF pages 153, 158-59.)  Standby Counsel Mr. Freeman was present during the plea colloquy and upon Petitioner's request, assisted him with the sentencing phase of the hearing.  (*Id.* at 170-179.)

15

In short, it was not unreasonable for the state court to view Petitioner's conduct during these proceedings as a clear and unequivocal waiver of counsel by conduct, and absolute insistence on self-representation. *See Duncan*, 800 F.3d at 648-52 (noting that some circuits recognize waiver by conduct, and that the Supreme Court has not ruled on this point); *see also State v. Leyshon*, 211 N.C. App. 511, 515-19 (2011) (concluding that defendant's willful misconduct forfeited counsel where defendant refused to address the trial court's inquiries regarding his right to counsel and, instead, repeatedly objected to the jurisdiction of the court based on unsupported legal theories). The state court adjudication of this issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as set out by the United States Supreme Court. For all these reasons, Petitioner's second ground for relief lacks merit.

### Ground Three

Third, Petitioner alleges a due process violation stemming from ineffective assistance of counsel. (Docket Entry 1, § 12, Ground Three.) In support, he asserts:

> Petitioner's ex-counsel, Lori Hamilton Dewitt has not filed any motions, made objections, nor investigated, to dismiss, suppress evidence, based on any U.S. Const. 4th Amend. violations, assertions, pertaining to it's provisions of requirements and criminal procedure in seizing/arresting the Petitioner. Lori Hamilton Dewitt has not filed any motions, made objections, nor investigated, to dismiss, suppress evidence, based on any U.S. Const. 14th Amend. due process violation.

(Docket Entry 1, § 12, Ground Three.)

To prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as result. *See Strickland v. Washington*, 466 U.S. 668, 688, 694

Case 1:16-cv-01376-LCB-JLW   Document 17   Filed 06/20/17   Page 16 of 22

(1984). Unsupported, conclusory allegations do not entitle a petitioner to relief. *See Nickerson* 971 F.2d at 1136. A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Prejudice requires a showing of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have differed. *Strickland*, 466 U.S. at 694 (1977). Moreover, a defendant who pled guilty in state court faces the "formidable barrier" of his sworn statements made during the plea colloquy, which he can only overcome by demonstrating "clear and convincing evidence" in support of his claim. *Blackledge*, 431 U.S. at 73-74; *Little*, 731 F.2d at 239 n.2.

This ground fails for a number of reasons. First, Petitioner did not receive ineffective assistance of counsel here, because he waived his right to counsel by his own conduct, as quoted above, and insisted on self-representation.[8] *See United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) (explaining "limited role" of standby counsel and clarifying that "standby counsel is not counsel at all, at least not as that term is used in the Sixth Amendment").

Second, even if standby counsel were subject to Sixth Amendment standards, no ineffectiveness has been shown here. This is because Petitioner has failed to allege in any meaningful degree of detail precisely what Petitioner believes counsel or stand-by counsel should have done. And, insofar as Petitioner may have cleared this hurdle, he also fails to demonstrate why any of the efforts he wishes counsel or stand-by counsel would have taken were likely to have been successful. Consequently, Petitioner has failed to demonstrate why

---

[8] To this end, Petitioner filed a number of pro se motions, some of which address issues he raises again in this proceeding, but which were, in pertinent part, denied by the state trial court. (Docket Entry 6, Ex. 1, Part 1 at PDF pages 14-43; *id.* at Part 2 at PDF pages 2-23; *id.*, Ex. 8 at PDF page 96.) Consequently, Petitioner could have, and in fact often did, raise with the state trial court a number of the issues he now contends counsel was deficient for failing to raise.

17

he was prejudiced as a result of these alleged omissions. Last, the state court adjudication of this issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as set out by the United States Supreme Court. For all these reasons, Petitioner's third ground for relief lacks merit and should therefore be denied.

## Grounds Four, Five, and Six

Petitioner's next three grounds all fail for the same reasons and will therefore be considered together. Specifically, Petitioner's fourth ground for relief asserts a due process violation due to an invalid indictment, error in pleading, want of probable cause, want of oath or affidavit or affirmation. (Docket Entry 1, § 12, Ground Four.) Petitioner's fifth ground for relief asserts a due process violation due to lack of confrontation and cross examination of witnesses and evidence. (Docket Entry 1 at 11.) Petitioner's sixth ground for relief asserts another due process violation stemming from an alleged lack of compulsory process for securing attendance of witnesses for defense. (*Id.*) As explained earlier, Petitioner pled guilty voluntarily, knowingly, and intelligently. Petitioner may not raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett*, 411 U.S. at 267; *McMann*, 397 U.S. at 766. Moreover, the state court adjudication of these issues was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as set out by the United States Supreme Court.[9] For all these reasons, Petitioner's fourth, fifth, and sixth grounds for relief all fail.

---

[9] While the Court need not address these grounds further, it will pause to note the following. First, there does not appear to be any problem with the indictments in this case. (Docket Entry 1 at 29-30.) Second, even if there were, "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." *Ashford v. Edwards*, 780

18

## Ground Seven

Seventh, Petitioner next asserts a due process violation due to cruel and unusual punishment, commitment, want of jurisdiction, and abuse of discretion. (Docket Entry 1, § 12, Ground Seven.) In support, Petitioner asserts that he "has not been shown how Magistrate David Theodore Miller II had jurisdiction to commit him to Davie County Detention Center under a $150,000 Second Bond on April 20, 2013." (*Id.*)

As an initial matter, these grounds for relief fail for being vague, conclusory, and unsupported. *See Nickerson*, 971 F.2d at 1136. Moreover, the Eighth Amendment requires only that a sentence not be "grossly disproportionate" to the crime. *Graham v. Florida*, 560 U.S. 48, 59 (2010) ("The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense.") (citation omitted). The Eighth Amendment's proportionality inquiry, therefore, is simply whether, "given all the circumstances in a particular case," "the sentence is unconstitutionally excessive." *Id.* Because this necessarily requires a fact-intensive, case-by-case approach, the Supreme Court has produced numerous decisions over the years upholding proportionality challenges over numerous sentences imposed for various crimes. *See id.* at 59-60.

As recognized in *Graham*, the Supreme Court has rejected several Eighth Amendment challenges to aggravated sentences that were the product of state recidivist sentencing schemes. *See id.* (citing *Ewing v. California*, 538 U.S. 11 (2003)) (noting that the Court has

---

F.2d 405, 407 (4th Cir. 1985). Finally, defective indictments do not deprive the state trial court of jurisdiction. *See United States v. Cotton*, 535 U.S. 625 (2002). Here, Petitioner has failed to demonstrate that this standard has been met. Like the remainder of Petitioner's contentions, this one fails too.

19

"rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's so-called three-strikes recidivist sentencing scheme"); *see also id.* (citing *Pummel v.. Estelle*, 445 U.S. 263, 100 S.Ct. 1133 (1980) (noting that the Court has "upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses"). By comparison, in this case, there is nothing excessive, disproportionate, cruel and/or unusual about a $150,000 bond or 44-65 and 15-27 month sentences for aiding and abetting an assault with a deadly weapon inflicting serious injury and larceny from the person.

Moreover, in North Carolina, the Superior Court has "exclusive, original jurisdiction" over all criminal offenses against the laws of North Carolina, "not assigned to the district court division," regardless of the citizenship of the defendant. N.C. Gen. Stat. § 7A-271. Additionally, North Carolina trial division courts "have personal jurisdiction over those who commit crimes within the borders of the state." *State v. Goode*, 710 S.E.2d 301, 303 (N.C. Ct. App. 2011). Petitioner violated North Carolina law in North Carolina. The North Carolina courts therefore have jurisdiction. Finally, the state court adjudication of this issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as set out by the United States Supreme Court. This ground for relief should be denied.

### Ground Eight

Last, Petitioner alleges a due process violation due to exclusionary rule, involuntary servitude, undue conviction, commitment. (Docket Entry 1 at 11.) In support, Petitioner asserts that his "conviction in May 11, 2015 is subject to the exclusionary rule and fraud. The trial judge's order is null and void for want to jurisdiction; Petitioner's guilty plea is

20

inadmissible." (*Id.*) This ground for relief fails for being vague, conclusory, and unsupported. *See Nickerson*, 971 F.2d at 1136. It also fails because, as explained, Petitioner's *Alford* plea was entered into knowingly, voluntarily and intelligently. Moreover, as explained, Petitioner violated North Carolina law in the state of North Carolina. The North Carolina courts therefore have jurisdiction. Finally, the state court adjudication of this issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as set out by the United States Supreme Court. This ground for relief should be denied.

## "Omnibus Motion"

Petitioner has also filed a pleading he has titled an "Omnibus Motion." (Docket Entry 10.) In it, Petitioner requests the appointment of counsel, an evidentiary hearing, discovery, bail, the entry of default judgment in his favor, a jury trial, and "reservation to appeal/review, 'Appealability.'" (*Id.* at 1.) Nevertheless, Petitioner has failed to demonstrate that he is entitled to any form of relief under any meaningful standard of review. As explained above, Petitioner's grounds all fail and, consequently, there is no reason to grant this motion in whole or in part. This motion should be denied.

## "Quo Warranto: Motion to Dismiss, Set Aside, Amend Relief Sought."

In this pleading, Petitioner provides additional argumentation in support of the relief he seeks. (Docket Entry 13.) The Court will therefore treat this pleading as a motion to amend the Petition and will permit Petitioner to so amend. (Docket Entry 1.) Nevertheless, for reasons described elsewhere herein, none of the contentions Petitioner has raised in any of his pleadings, including this one, have merit.

Case 1:16-cv-01376-LCB-JLW   Document 17   Filed 06/20/17   Page 21 of 22

## CONCLUSION

Petitioner's grounds fail for the reasons set forth above and should therefore be denied. Neither a hearing, nor discovery, nor the appointment of counsel, nor any other form of relief is warranted.

**IT IS THEREFORE ORDERED** that Petitioner's "Quo Warranto: Motion to Dismiss, Set Aside, Amend Relief Sought" (Docket Entry 13), which the Court construes as a motion to amend the initial Petition (Docket Entry 1), be granted to the extent Petitioner seeks to amend the Petition.

**IT IS RECOMMENDED** that Petitioner's Omnibus Motion (Docket Entry 10) be **DENIED**.

**IT IS RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be **GRANTED**, that the Petition (Docket Entry 1), as amended, be **DENIED**, and that Judgment be entered dismissing this action.

Joe L. Webster
United States Magistrate Judge

June 20, 2017

22